UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION
IN RE:
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JEFFCOAT ENTERPRISES, INC., | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:20-mc-00112-AGF |
| CHARTER COMMUNICATIONS, INC., | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM & ORDER**

This matter is before the Court on Movant Jeffcoat Enterprises, Inc. ("Jeffcoat")'s unopposed Amended Motion to Compel Pursuant to a Rule 45 Subpoena and for Court Authorization Pursuant to the Cable Communications Act, 47 U.S.C. § 551(c)(2)(b). (Doc. No. 3).  Jeffcoat seeks to have this Court order Charter Communications, Inc. ("Charter"), a nonparty to the underlying lawsuit in the Northern District of Alabama, to produce subscriber information associated with an Alabama telephone number, as well as a record of inbound and outbound calls from Defendants' business lines.  For the reasons discussed below, the Court will compel and order Charter to respond to Movant's subpoena.

**Background**

**A.  The Underlying Lawsuit**

Movant Jeffcoat Enterprises owns Jeffcoat Funeral Home, which has operated in

1

Alabama since 1969. (Doc. No. 3-1 at 3). Defendants Brad and Madonna Linville are former employees of Jeffcoat Funeral Home who now own and operate Linville Memorial Funeral Home, a competing funeral service business in the same "territory" as Jeffcoat. (*Id.* at 10). Jeffcoat alleges that, over the course of a few years, Defendants Brad and Madonna Linville accessed its account on Funeral Call—a funeral home answering service—in order to siphon off business. (*Id.* at 4-5). Jeffcoat alleges it was alerted to this activity on December 10, 2017, after it received a call from a local nursing home facility asking why it had failed to retrieve a deceased body. (*Id.* at 4). Confused, a Jeffcoat Funeral Home employee called into Funeral Call and found that they had, in fact, received a message from the facility the day earlier and that it had been listened to by an unknown person. (*Id.* at 5). Believing that an unauthorized person had accessed its recordings, Jeffcoat requested call logs from Funeral Call to see who had been accessing the account. (*Id.*). Jeffcoat alleges that these logs revealed several unauthorized numbers, including the main business number for Linville Memorial Funeral Home, had called into its answering service and listened to hundreds of its messages. (*Id.* at 5).

In the underlying action, Jeffcoat brings the following claims against Defendants: violations of the Stored Communication Act, 18 U.S.C. 2701, *et seq.*; tortious interference with business relations; invasion of privacy; and trespass to chattels. Defendants have denied these allegations and have since counterclaimed against Jeffcoat. The parties are currently engaged in discovery. (Doc. No. 3 at 2).

### B. The Motion to Compel and for Court Authorization

On January 6, 2020, Jeffcoat issued a Rule 45 subpoena to Charter in order to

obtain names and addresses on file for all of the subscribers of telephone number 334-659-4730 (the main business lines for Linville Memorial Funeral Home) from April 28, 2015 to August 1, 2019, as well as inbound and outbound calls for the Linville Memorial Funeral Home business lines for the same date range.  On January 15, 2020, Charter sent a letter to Plaintiff acknowledging receipt of the subpoena and informing Plaintiff that, under the Cable Communications Act of 1934 ("Cable Act"), it was prohibited from providing subscriber information to a third party unless an exception under the Act applied.  (Doc. No. 3-3 at 1).  Charter told Jeffcoat that the "exception applicable here . . . requires a court order and notice to the subscriber before disclosure of information can be made." (*Id.*).

On February 21, 2020, Jeffcoat filed this miscellaneous case asking the Court to authorize and compel Charter to respond to the subpoena.  (Doc. No. 1).  Upon review of Jeffcoat's motion to compel, the Court recognized that Charter was not listed on its certificate of service.  The Court ordered Jeffcoat to file proof of service to Charter (Doc. No. 2), which it did on March 26, 2020 (Doc. No. 4).  On April 14, 2020, the Court was aware that Charter had neither entered the case nor filed a response to Jeffcoat's motion to compel.  As a result, the Court entered a show cause order directing Charter to respond on or before April 28, 2020, and instructing Charter that its failure to respond would result in the Court ruling on Jeffcoat's unopposed motion.  Charter did not file a timely response to the Court's show cause order.  The Defendants in the underlying action were also served with Jeffcoat's motion to compel, and Defendants have not raised any objection to the production Jeffcoat seeks.

3

**Legal Standard**

Under Rule 34(c), Fed. R. Civ. P., a litigant can subpoena a third party to produce materials pursuant to Rule 45. If a third party objects to the subpoena, the serving party "may move the court for the district *where compliance is required* for an order compelling production." Fed. R. Civ. P. 45(d)(2)(B)(i) (emphasis added). "[Rule] 45(c) provides that the place of compliance for a subpoena served on a nonparty is 'at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person.'" *Nestle Purina Petcare Co. v. Blue Buffalo Co. Ltd.*, No. 4:14 CV 859 RWS, 2016 WL 2609795, at *1 (E.D. Mo. May 6, 2016). As a result, a court has jurisdiction over a motion to compel documents if it is "a court for the district encompassing the place of compliance"; in other words, a court has jurisdiction if it is the court in the district within 100 miles of where the nonparty resides, works, or regularly transacts business.[1] *See id.* (citing Fed. R. Civ. P. 45(c)-(d); *In re Digital Equip. Corp.*, 949 F.2d 228, 231 (8th Cir. 1991)); *see also Raap v. Brier & Thorn, Inc.*, No. 17-MC-3001, 2017

---

[1] Some courts interpret "the place of compliance" differently, finding that "the place of compliance" is the location identified on the subpoena for where the documents should be produced. *See, e.g.*, *Adams v. Symetra Life Ins. Co.*, No. 19-MC-401-EFM-ADM, 2020 WL 489523, at *3 (D. Kan. Jan. 28, 2020) ("[T]he undersigned shares the view of courts that have determined that the place of compliance is the location for production identified on the subpoena."); *Semex Alliance v. Elite Dairy Genomics, LLC*, No. 3:14–cv–87, 2014 WL 1576917, at *1 (S.D. Ohio, Apr. 17, 2014) (finding the subpoena commanded compliance in Chicago, Illinois, and that the U.S. District Court for the Northern District of Illinois was the court for the district where compliance was required); *U.S. Risk Ins. Grp., Inc. v. U.S. Risk Mgmt., LLC*, No. 3:11–cv–2843–M–BN, 2014 WL 4055372, at *1 (N.D. Tex. Aug. 15, 2014) (finding that the subpoena commanded the witness to produce documents in Dallas, Texas, and, therefore, the motion to compel was properly filed in the Texas district court).

WL 2462823, at *3 (C.D. Ill. July 7, 2017) ("Therefore, the court in which compliance is required under Rule 45(c) is the court in the district within 100 miles of where the subpoenaed person resides, is employed, or regularly transacts business in person."); *XTO Energy, Inc. v. ATD, LLC*, No. 14-1021 JB/SCY, 2016 WL 1730171, at *20 (D.N.M. Apr. 1, 2016) ("[R]evised rule 45(d)(3) provides that motions to quash or enforce a subpoena can be brought in the district where compliance is required—i.e., the district in which the subpoena's recipient resides or works . . . .").

The moving party carries the burden of showing that the requested documents are discoverable. *Cent. States, Se. & Sw. Areas Pension Fund v. King Dodge, Inc.*, No. 4:11MC00233 AGF, 2011 WL 2784118, at *2 (E.D. Mo. July 15, 2011). Under Rule 26, Fed. R. Civ. P., litigants may obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Relevancy in this context "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. *Prime Aid Pharm. Corp. v. Express Scripts, Inc.*, No. 4:16-CV-1237 (CEJ), 2017 WL 3128917, at *1 (E.D. Mo. July 24, 2017) (quoting *Jo Ann Howard & Assocs., P.C. v. Cassity*, 303 F.R.D. 539, 542 (E.D. Mo. 2014)).

## Discussion

Jeffcoat argues that the subscriber information associated with the Linville Memorial Funeral Home main business line, as well as the record of inbound and outbound calls from Linville Memorial Funeral Home's business lines, are crucial to proving its causes of action in the lawsuit. Specifically, Jeffcoat states that the call information would

5

allow it to "ascertain the dates and times Defendant Linville Memorial accessed its voice mail without authorization as well as reveal calls made to Plaintiff's clients after the unauthorized access to Plaintiff's private voice mail system." (Doc. No. 3 at 5).  Due to the proprietary nature of Charter's records and the absence of any publicly available information, Plaintiff argues that it has no other means to positively identify the unauthorized callers to its Funeral Call account or to discern any potential tortious interference with its business relationships.  (*Id.*).

As a threshold matter, the Court finds that it has jurisdiction over this motion to compel.  Although Jeffcoat commanded the documents to be produced at its lawyer's office in Alabama, the place of compliance under Rule 45 "is tethered to the location of the subpoenaed [party]."  *Agincourt Gaming, LLC v. Zynga, Inc.*, No. 2:14-CV-0708-RFB-NJK, 2014 WL 4079555, at *4 (D. Nev. Aug. 15, 2014).  Because Charter regularly transacts business in St. Louis City, an area within this Court's jurisdiction, this Court encompasses the "place of compliance" as required to find jurisdiction under Rule 45and is therefore empowered to enforce the subpoena.

Upon review and consideration of Movant's uncontested motion, the Court finds that the information sought by Jeffcoat is relevant to the underlying action.  Specifically, the information will help Jeffcoat determine whether Defendants have been accessing its answering service to the detriment of its business.  Having no objection from Charter as to why it should not be required to produce this information, the Court will grant Jeffcoat's motion to compel.  Because the subpoena requests subscriber information, this Court will also authorize Charter to provide the information as required by the Cable Act.

6

*See* 47 U.S.C. § 551(c)(2) (B) (allowing for a cable operator to disclose identifiable subscriber information if the disclosure is "made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person whom the order is directed").

Accordingly,

**IT IS HEREBY ORDERED** that Movant Jeffcoat Enterprises, Inc.'s amended motion to compel (Doc. No. 3) is **GRANTED**. Jeffcoat's original motion, (Doc. No. 1), will be **DENIED as moot**.

**IT IS FURTHER ORDERED** that this Order shall be deemed an appropriate order under 47 U.S.C. § 551 to authorize the subpoena previously served by Movant on Charter Communications, Inc.

**IT IS FURTHER ORDERED** that any information disclosed to Movant in response to the subpoena issued to Charter Communications, Inc. under Fed. R. Civ P. 45 may be used by Movant solely for litigation in this matter.

**IT IS FURTHER ORDERED** that good faith attempts by Charter Communications to notify the subscriber(s) shall constitute compliance with this order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 1st day of May, 2020.